**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| THOMAS BROOKS and JONATHAN DEINARD, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| vs. | ) ) | |
| BFI WASTE SYSTEMS OF TENNESSEE, LLC., d/b/a "MIDDLE POINT LANDFILL", | ) ) ) | CLASS ACTION COMPLAINT |
| Defendant. | ) ) | |
| | ) | **JURY DEMAND** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME Plaintiffs, Thomas Brooks and Jonathan Deinard, by and through their undersigned counsel, on behalf of themselves and all other similarly situated, bring this putative class action against Defendant BFI Waste Systems of Tennessee, LLC, d/b/a "Middle Point Landfill" as a result of property damages suffered due to noxious odor emissions from Defendant's landfill located at 750 E. Jefferson Pike in Murfreesboro, Tennessee (hereinafter the "Landfill"). Plaintiffs assert claims for private nuisance, public nuisance, and negligence and seek compensatory and punitive relief against Defendant as well as injunctive relief not inconsistent with Defendant's federally and state enforced permits. Plaintiffs respectfully allege and state as follows:

## PARTIES

1.     At all times relevant hereto, Plaintiff Thomas Brooks owns, resides, and intends to remain at 1418 Alamo Ave, Murfreesboro, TN 37129. Plaintiff Thomas Brooks is an individual domiciled in Tennessee; therefore, Plaintiff is a citizen of Tennessee.

2. At all times relevant hereto, Plaintiff Jonathan Deinard owns, resides, and intends to remain at 808 Arbon Vale Dr, Murfreesboro, TN 37130. Plaintiff Jonathan Deinard is an individual domiciled in Tennessee; therefore, Plaintiff is a citizen of Tennessee.

3. Defendant is a limited liability company organized in Delaware and with principal place of business located at 5353 E. City North Drive, Phoenix, Arizona 85054. Defendant is a citizen of Arizona through at least one of its members.

4. Defendant may be served with process in Tennessee through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

5. Defendant and its agents, have at all time relevant hereto, owned, operated and maintained the Landfill, located at 750 East Jefferson Pike, in the City of Murfreesboro, County of Rutherford, State of Tennessee.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, Defendant is a citizen of a different state from at least one Plaintiff, satisfying minimal diversity.

7. The Court has personal jurisdiction over Defendant, who has sufficient minimum contacts with the State of Tennessee, because it regularly conducts business in Tennessee through its ownership and operation of the Landfill and Plaintiffs' claims arise through such contacts with the forum state.

8. Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because

2

Defendant has purposefully availed itself of the laws of the State of Tennessee and it benefits by regularly conducting business through its industrial operations in the state.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because the property that is subject of this action is geographically situated in this District.

## FACTUAL ALLEGATIONS

10. Defendant owns and operates a Class I municipal solid waste (MSW) Landfill located at 750 East Jefferson Pike, Murfreesboro, Tennessee.

11. On a daily basis, Defendant's landfill receives thousands of tons of municipal waste, including household, commercial, industrial, construction and demolition, and special wastes.

12. Materials deposited into Defendant's Landfill decompose and generate (among other things) Landfill gas, an odorous and offensive byproduct of decomposition which generally consists of methane, hydrogen sulfide, carbon dioxide, and various odorous compounds.

13. Landfill gas from landfills that accept construction and demolition debris, like Defendant's, can be especially odiferous given the high content of hydrogen sulfide, which is known to have a characteristic "rotten-egg" smell.

14. Hydrogen sulfide is produced at Defendant's Landfill through the breakdown of organic matter and/or the breakdown of gypsum-containing materials, including but not limited to drywall, wallboard, and sheetrock, which becomes saturated under anaerobic conditions, causing sulfate-reducing bacteria to thrive and produce hydrogen sulfide.

15. Hydrogen sulfide present in landfill gas can be detected as noxious odors at very low concentrations of only 0.5 parts per billion.

16. A properly operated, maintained, and managed landfill will collect, capture and destroy landfill gas from the landfill to prevent it from escaping into the ambient air as fugitive emissions.

17. Landfill gas may be collected and processed through a system of wells and pipes, in addition to blowers, flares, and/or vacuums at the landfill. This landfill gas may be later flared or processed into energy through a variety of treatment systems.

18. Defendant's Landfill operations produce large quantities of leachate, a highly odiferous liquid comprised of liquid waste from materials received at the Landfill. If not properly treated and contained, this leachate can emit noxious odors beyond the Landfill's property boundary.

19. Leachate forms when wastes filter rainwater, whereby the rainwater draws out or leaches the wastes of chemicals and other hazardous constituents.

20. A properly operated, maintained, and managed landfill will collect, capture, and safely dispose of leachate through a leachate drainage, collection, and removal system.

21. A properly operated, maintained, and managed landfill will utilize a system of sumps and pipes to pump out and remove leachate so that the leachate may be properly routed, treated, and disposed. Leachate management is key to reducing the probability of landfill gas production.

22. A properly operated, maintained, and managed landfill will implement adequate daily cover practices to reduce leachate formation, prevent water infiltration, control odor emissions, and mitigate landfill gas emissions.

23. Daily cover involves covering the Landfill's working face, where waste is actively unloaded, with soil or similar alternative materials at the end of each day.

24. A properly operated, maintained, and managed landfill will control the size of its working face so that it may implement adequate daily cover and mitigate landfill gas emissions.

25. Defendant is required to control its odorous emissions by, among other things, following proper landfilling practices, utilizing adequate landfill cover and covering practices, utilizing adequate lining and lining practices, limiting and/or pre-treating biosolid waste, utilizing odor control technologies, utilizing stormwater management techniques, and installing, operating, maintaining systems for the routing, capture, removal, and elimination of leachate and landfill gas.

26. Defendant has failed to implement an adequate leachate collection and removal system in its Landfill that properly lines, covers, routes, captures, and disposes of leachate, thereby resulting in the offsite emission of noxious odors.

27. Defendant's Landfill has failed to implement an adequate landfill gas collection system, which is necessary to capture and collect landfill gas generated by the Landfill, thereby resulting in the offsite emission of noxious odors.

28. Defendant has failed to implement daily cover for the open garbage on its Landfill and has failed to adequately mitigate leachate formation, water infiltration, odor emissions, and landfill gas emissions, thereby resulting in the offsite emission of noxious odors.

29. Defendant has failed to follow proper Landfilling practices to prevent noxious offsite odor emissions and has failed to sufficiently collect, capture, and destroy Landfill gas and/or leachate generated at its Landfill to prevent fugitive emissions and to otherwise prevent odors from the Landfill from invading the homes and properties of Plaintiffs and the Class.

30. Defendant's odor emissions are abatable with reasonable care and diligence by implementing reasonable emission control systems and by following proper landfilling practices and procedures. Unfortunately, Defendant has failed to exercise reasonable care and diligence in

its operation and maintenance of the Landfill, and Defendant's odor emissions have not been abated.

31. Defendant's Landfill is surrounded by residential properties.

32. On frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiffs' properties have been and continue to be physically invaded by noxious odors.

33. The noxious odors which entered Plaintiffs' properties originated from Defendant's Landfill, as a result of Defendant's intentional and/or negligent acts and/or omissions.

34. These odors caused by the Landfill have been and continue to be dispersed across all public and private land in the Class Area.

35. Defendant's Landfill emissions have been the subject of frequent odor complaints from residents in the nearby residential area.

36. The City of Murfreesboro has reported that there have been over 4,000 odor complaints from residents around Defendant's Landfill from 2021 to 2025.

37. Numerous households have contacted Plaintiffs' counsel documenting the doors they attribute to the Defendant's Landfill.

38. Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Landfill is the source and cause of the odor emissions which have caused damages to neighboring properties:

   a. Plaintiff Thomas Brooks stated that "When the chemical smell is present, which is regularly, we cannot open windows or enjoy sitting outside on our porch. We are also concerned with our health especially since the runoff ends up in our drinking water. We are also concerned about resale value with the attention this is getting in the media."

   b. Plaintiff Jonathan Deinard indicated that "There are routine odors emitted from the landfill. The odors are especially apparent when wind blows from the north (direction of landfill from property) and has distinct odor of rotten eggs, skunk, feces, and is definitely related."

6

c. Putative Class Member Nacy Herbek stated that "The odors force me to keep my windows closed, limit my outdoor activities. At times, I became nauseous when strong odors emitted"

39. Defendant has been routinely cited and penalized by regulators for failure to maintain its Landfill in accordance with its operating permits.

40. On March 3, 2023, Defendant received an Notice of Violation (NOV) from the Tennessee Department of Environment and Conservation (TDEC) for violating the Tennessee Solid Waste Disposal Act, Tenn. Code. Ann. 68-211-101 *et seq.*, for failing to capture and dispose of leachate. The February 17, 2023, inspection report found the following: "Leachate entering run-off – Trash and leachate were washed into the stormwater ditch but did not appear to leave the facility. Facility is assessing the stormwater pond for the potential impact."

41. On March 10, 2025, TDEC observed a major violation at Defendant's Landfill, finding the following: "V2 (INADEQUATE MAINTENANCE OF LEACHATE MANAGEMENT SYSTEM): Sump #13 was measured at 95.7", 38.1" above the 57.6" compliance level. This needs to be addressed."

42. TDEC has otherwise discovered numerous instances of Defendant's improper landfilling, daily cover, landfill gas mitigation, and leachate collection. Below is a small sampling of TDEC's findings at Defendant's Landfill:

a. September 18, 2023: "AOC - Leachate was observed in a puddle in the storm-water ditch. Site staff was in the process of fixing the issue while I was on site."

b. October 13, 2023: "I have requested a plan and timeline addressing their standing violation for inadequate intermediate cover. The deadline for submittal is noon on 10/26/23. AOC – Tires."

c. February 14, 2024: "V1 (8350): Leachate observed at the Site: There was a leachate outbreak at Section 9 of the landfill. This spot was not on the board so it was not noticed on the drive around morning inspection. AOC (8430): Waste not confined to a Manageable Area: The working face seems a bit larger than

7

manageable at the moment. I do know that there were plans to move the tipping pads so this might be part of the larger than normal area."

d. October 16, 2024: "V1 (0400-11-01-.01(4)(d)1.): There was a special waste from Bridgestone accepted at a capacity over the permitted amount. There has already been a request for an increase in volume put in to TDEC to prevent this from reoccurring."

e. June 6, 2025: "V1 (INADEQUATE ARTIFICIAL OR NATURAL BARRIER): Representative Terry witnessed the southern gate with a huge hole which would allow access to the facility. V1 (UNSATISFACTORY INITIAL COVER): The interior slope above the new cell had a considerable amount of flagging due to the placement of over-used breach soil as initial cover. The facility stated they would have this covered with new soil this week but was only half completed by the end of the week."

f. July 1, 2025: "AOC (UNSATISFACTORY LITTER CONTROL): There was wind-blown litter that had come off of the working face and down the slope. Middle point was actively working on putting up a litter fence at the time and I made the staff aware of the issue an V1 (UNSATISFACTORY INITIAL COVER): The top of the northern slope had significant flagging."

g. July 8, 2025: "V1(UNSATISFACTORY INITIAL COVER): Initial cover still needs work done on both the northern top slope and bottom slope near the working face."

h. August 15, 2025: "V1 (Leachate Observed at the Site): Leachate on the external slope: 'there was a leachate outbreak on the east slope, right before sump #11.'"

i. September 10, 2025: "AOC (LEACHATE ON EXTERNAL SLOPE) V1 (LEACHATE ENTERING RUN-OFF): There were leachate outbreaks observed on the exterior slope of the western side of the landfill. This was an area that was being worked on to prepare it for being tied into another cell. The outbreak had caused leachate to run down into the dry ditch and pool there... AOC (UNSATISFACTORY INITIAL COVER): There was flagging near the active face that needs to be repaired."

j. September 30, 2025: "V1 (LEACHATE ENTERING RUN OFF): Leachate was entering dry run off ditches on the eastern and western side of the landfill."

k. January 12, 2026: "LEACHATE OBSERVED AT THE SITE (AOC): There was a puddle of leachate in the ditch on the western side of the landfill. This was due to construction in that area and the puddle was cleaned up before end of day. UNSATISFACTORY INITIAL COVER (V1): As part of a complaint that was made on January 12, 2026, it was found that a section underneath the current working face was not covered properly and recent rain events have

8

caused waste to become uncovered. This needs to be repaired in accordance with our regulations."

43.    TDEC routine inspections have notified Defendant numerous times of Articles of Concern (AOC) regarding its Landfill operations that were not reported formally as violations.

44.    In 2022, the City of Murfreesboro filed a lawsuit against Defendant and its parent companies under the Clean Air Act (CAA), Clean Water Act (CWA), Solid Waste Disposal Act, and under common law for Defendant's failure to maintain and operate the Landfill to control air pollution and reduce odor emissions, including "failed and delayed site management, uncontrolled landfill gas emissions, ongoing leachate outbreaks, and an ongoing exothermic reaction from industrial secondary aluminum smelting ("SAS") waste."[1]

45.    The City of Murfreesboro has further delineated and notified Defendant of the following operational failures at Defendant's Landfill from the period of January 2024 through June 2025: excessive numbers of positive pressure gas wells, excessive quarterly surface emissions of methane, excessive landfill gas collection system and wellhead malfunctions.[2]

46.    Defendant's Landfill has repeatedly and continually emitted objectionable noxious odors that were detectable outside the bounds of its property.

47.    The Landfill has emitted noxious odors that have caused negative impacts to its neighbors.

48.    Defendant's harmful, odorous emissions are continuing; Defendant has failed to cease the noxious emissions, despite knowledge, and despite the emissions being abatable with reasonable care and diligence.

---

[1] *City of Murfreesboro, Tennessee vs. BFI Waste Systems of Tennessee, LLC*, et al., No. 3:22-mc-09999 (M.D. Tenn.). https://www.murfreesborotn.gov/DocumentCenter/View/22021/Federal-filed-complaint-by-the-City-of-Murfreesboro
[2] https://www.murfreesborotn.gov/DocumentCenter/View/35490/2025-09-15-CAA-NOI

9

49. The noxious odors emitted from the Landfill are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

50. Plaintiffs and the putative class are a limited subset of individuals in Rutherford County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

51. The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, tourism, health care & social assistance, ministry, and education.

52. Members of the public, including but not limited to business owners, employees, commuters, visitors, customers, clients, worshippers, students, and patients, have experienced and been harmed by the fugitive noxious odors emitted from the Landfill into public spaces; however, unlike Plaintiffs and the putative class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

## CLASS ALLEGATIONS

### *Class Definition*

53. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner-occupants and renters of residential property residing within three (3) miles of Defendant's Landfill at any time within the applicable statute of limitations.**

The proposed class boundary is subject to modification as discovery progresses. Plaintiffs reserve the right to propose one or more subclasses if discovery reveals that such subclasses are appropriate.

54. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

    a. The class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b. There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

    c. The claims of the representative parties are typical of the claims of the class;

    d. Questions of law and fact such as those enumerated herein, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

    e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f. The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

    g. There are no unusual difficulties foreseen in the management of this class action; and,

    h. Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

## A. Numerosity

55. Based on available data, there are thousands of households within the Class Area and therefore the Class is so numerous that joinder is impracticable.

## B. Commonality

56. Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including, but not limited to the following:

a. Whether and how Defendant negligently and knowingly failed to reasonably maintain and operate the Landfill to prevent offsite odor emissions;

b. Whether Defendant owed any duties to Plaintiffs;

c. Which duties Defendant owed to Plaintiffs;

d. Which steps Defendant has and has not taken in order to control the emission of noxious odors through the maintenance and operation of its Landfill;

e. Whether and how Defendant improperly operated and/or maintained the landfill gas collection system(s), or otherwise improperly disposed of landfill gas;

f. Whether and how Defendant operated and/or maintained leachate management systems to prevent fugitive odor emissions;

g. Whether and how Defendant engaged in adequate covering practices to prevent fugitive odor emissions;

h. Whether Defendant breached its duty and/or acted unreasonably in its landfilling practices, to prevent odors from migrating offsite into the surrounding residential community;

i. Whether and to what extent the Landfill's noxious odors were dispersed over the Class Area;

j. Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Landfill would result in an invasion of Plaintiffs' property interests;

k. Whether Defendant's emission of odors into the Class Area was substantial and unreasonable and constitutes a nuisance under an objective legal standard;

l. Whether and to what degree Defendant's odor emissions have caused adverse impacts on the value of Plaintiffs' properties and similarly situated properties throughout the Class Area; and,

m. The proper measure of damages incurred by Plaintiffs and the Class.

57. The availability of common proof as to a limited subset of the above questions of law and fact may otherwise permit issue certification under Fed. R. Civ. P. 23(c)(4).

## C. Typicality

58. Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

59. The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly maintain and/or operate the Landfill.

60. Class Members have similar injuries to the Plaintiffs as a result of the invasion of their properties by Defendant's release of noxious odors causing damage to their properties.

61. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care.

## D. Adequacy of Representation

62. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

63. Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of noxious odors originating from Defendant's Landfill.

64. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from the offsite emission of noxious odors from landfills.

13

65. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**E. Class Treatment is the Superior Method of Adjudication**

66. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a. Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudication with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

    b. Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

    c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and,

    d. The proposed class action is manageable.

67. Further, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

68. Notice can be provided to members of the Class by U.S. Mail and/or publication.

<u>**CAUSE OF ACTION I – PRIVATE NUISANCE**</u>

69. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

70. The Defendant owed and continues to owe a duty to Plaintiffs and the Class to prevent and abate the unreasonable interference with and invasion of their private property interests.

71. The noxious odors which entered the Plaintiffs' and Class's properties originated from the Landfill, which was unreasonably maintained and/or operated by the Defendant.

14

72. The noxious odors invading the Plaintiffs' and Class's properties are indecent and offensive to a reasonable person with ordinary health and sensibilities.

73. The repeated invasion of noxious odors on the Plaintiffs' and Class's properties obstruct the free use thereof and unreasonably interfere with the enjoyment of life and property. These interferences include but are not limited to the following:

   a. Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

   b. Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

   c. Depriving the Plaintiffs and Class Members of the value of their homes and properties; and,

   d. Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

74. The above interferences are objectively offensive to a person of ordinary sensibilities, are seriously annoying and intolerable, have rendered significant discomfort to the reasonable use and enjoyment of Plaintiffs' and Class's properties, and have occurred over an unreasonable length of time.

75. By failing to reasonably repair, maintain, and operate the Landfill, thereby causing noxious odors to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and the Class's properties.

76. Defendant's nuisance is recurring and ongoing.

77. Defendant's nuisance is temporary and abatable with ordinary care and diligence.

15

78. As a foreseeable, direct, and proximate result of the forgoing misconduct of the Defendant, the Plaintiffs and the Class suffered damages to their properties as alleged herein.

79. Plaintiffs and the putative class are a limited subset of individuals in Rutherford County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

80. The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious odors, which is ongoing and which constitutes a nuisance.

81. Any social utility that is provided by the Landfill is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

82. The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, and/or punitive relief.

### CAUSE OF ACTION II – PUBLIC NUISANCE

83. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

84. Plaintiffs and the Class reside at their properties located within the Class Area.

85. The noxious odors which entered Plaintiffs' and the Class's properties originated from Defendant's Landfill, which was unreasonably maintained and/or operated by the Defendant.

86. The noxious odors invading the Plaintiffs' and Class's properties are indecent and offensive to a reasonable person with ordinary health and sensibilities.

87. The repeated invasion of noxious odors on the Plaintiffs' and Class's properties obstruct the free use thereof and unreasonably interfere with the enjoyment of life and property. These interferences include but are not limited to the following:

    a. Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

    b. Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

    c. Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

    d. Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

88. The above interferences are objectively offensive to a person of ordinary sensibilities, are seriously annoying and intolerable, have rendered significant discomfort to the reasonable use and enjoyment of Plaintiffs' and Class's properties, and have occurred over an unreasonable length of time.

89. By failing to reasonably repair, maintain, and operate the Landfill, thereby causing noxious odors to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and the Class's properties.

90. Defendant's nuisance is recurring and ongoing.

91. Defendant's nuisance is temporary and abatable with ordinary care and diligence.

92. As a foreseeable, direct, and proximate result of the foregoing misconduct of the Defendant, the Plaintiffs and the Class suffered special harm to their properties as alleged herein.

17

93. Separate and apart from the private property damage incurred by the Plaintiffs and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to breathe clean air.

94. The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, tourism, health care & social assistance, ministry, and education.

95. Members of the public, including but not limited to business owners, employees, commuters, visitors, customers, clients, worshippers, students, and patients, have experienced and been harmed by the fugitive noxious odors emitted from the Landfill into public spaces; however, unlike Plaintiffs and the putative class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

96. The damages suffered by the Plaintiffs and Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their lands and properties, and decreased property values, which are not harms suffered by the general public.

97. The general public is also impacted by the Landfill's noxious odors when they work, study, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property, or to private residential property values.

98. The fugitive noxious odors emitted by the Defendant's Landfill have been, and continue to be, unreasonably dispersed across public and private land throughout the Class Area.

99. The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious odors, which is ongoing and which constitutes a nuisance.

100. Any social utility that is provided by the Landfill is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

101. By failing to reasonably repair, maintain, and operate the Landfill, thereby causing noxious odors to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a public nuisance that substantially and unreasonably interferes with the Plaintiffs' and the Class's properties.

102. The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a public nuisance, from which Plaintiffs have suffered damages different in kind from the general public. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, and/or punitive relief.

## CAUSE OF ACTION III – NEGLIGENCE

103. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

104. The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Landfill in a reasonable manner and to reasonably prevent fugitive emissions of noxious odors from the Landfill.

105. The Defendant breached its duties by negligently and improperly maintaining and operating the Landfill, which was the direct and proximate cause of the invasion by noxious odors upon the Plaintiffs' and Class's homes, lands, and properties on occasions too numerous to list individually.

106. Such invasions by noxious odors were the foreseeable result of the foregoing conduct of the Defendant, and the Plaintiffs and Class suffered damages to their properties as

alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of their properties and the diminution of property values.

107. By failing to properly maintain and operate the Landfill, the Defendant failed to exercise the duty of ordinary care and diligence.

108. Defendant's breach is demonstrated by its extensive administrative violations and civil penalties, and in the following operational failures:

    a. Failing to properly control the creation of odiferous compounds from its Landfill;

    b. Failing to implement an adequate landfill gas collection system;

    c. Failing to adequately monitor the creation of landfill gas;

    d. Failing to apply adequate daily cover;

    e. Failing to adequately collect and manage leachate;

    f. Failing to adequately implement odor neutralizing systems; and,

    g. Other failures that have yet to be discovered.

109. The Defendant's negligent and improper maintenance of its Landfill is the direct and proximate cause of the invasion of noxious odors upon the Plaintiffs' and Class's homes, land, and properties on occasions too numerous to mention individually.

110. By failing to maintain and/or operate the Landfill, the Defendant negligently, knowingly, intentionally, and recklessly caused the invasion of the Plaintiffs' property by noxious odors.

111. Such invasions by noxious odors were the foreseeable result of the foregoing misconduct by the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. This includes the loss of use and enjoyment of their properties and the diminution of property values, and other losses to be proven at trial.

112. Defendant could reasonably anticipate that the invasion of the Landfill's noxious odors upon the Plaintiffs' and the Class's properties would result in property damages in the form of the loss of use and enjoyment and the diminution of property values.

113. The Defendant's negligence caused harm to the Plaintiffs' and Class's properties, which entitles the Plaintiffs and Class to an award for compensatory, injunctive, and/or punitive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class by order pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and the Class Members as against the Defendant;

D. An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E. An award of attorneys' fees and costs, including pre- and post-judgement interest;

F. An Order holding that the entrance of the aforementioned noxious odors upon the Plaintiffs' and Class's properties constitutes a nuisance;

G. An Order holding that the Defendant was negligent in causing noxious odors to repeatedly invade and interfere with the Plaintiffs' and Class's private residential properties;

H. An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and

I. Such further relief, both general and specific, that this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues raised in this Complaint.

Dated: April 7, 2026

Respectfully submitted,

/s/ *Andrew C. Clarke*
Andrew C. Clarke (#15409)
Greer Injury Lawyers
6256 Poplar Ave.,
Memphis, TN 38119
(901) 306-9689
aclarke@greerinjurylawyers.com

/s/ *Steven D. Liddle*
Steven D. Liddle*
Laura L. Sheets*
D. Reed Solt*
**LIDDLE SHEETS P.C.**
975 E. Jefferson Ave.
Detroit, MI  48207
(313) 392-0015
sliddle@lsclassaction.com
lsheets@lsclassaction.com
rsolt@lsclassaction.com
*Pro Hac Vice Motions to be
submitted*

*Attorneys for Plaintiffs*